2010 UT 10

COMMERCIAL DEBENTURE CORPO-
RATION, Donald Skipworth, J. Fred
Smith, and Tri–State Realtors, P.C.,
Plaintiffs and Appellants,

v.

AMENTI, INC.; and Merlin R. Morrison,
Jr. aka Merlin Morrison, Defendants
and Appellees.

No. 20080297.

Supreme Court of Utah.

Feb. 19, 2010.

Gregory B. Smith, West Jordan, for appellants.

Jon V. Harper, Thomas R. Karrenberg, Jess M. Hofberger, Salt Lake City, for appellees.

NEHRING, Justice:

## INTRODUCTION

¶1 Commercial Debenture Corporation ("CDC") appeals from an adverse result of a bench trial. CDC contended that it was entitled to $1,568,000, a sum that represented one-half of all the proceeds of the sale of real property situated in West Jordan, Utah. CDC grounded its claim in a development contract and two listing agreements. Following a bench trial, the district court rejected all of CDC's claims. We affirm.

## BACKGROUND

¶2 CDC entered into a Development Contract with Merlin Morrison in August 1997. Under the terms of the contract, CDC was to subdivide and sell fifty-six acres of land that Mr. Morrison owned. In return for its labors, CDC would receive fifty percent of the retail sale of each lot after the deduction of certain expenses. The Development Contract could not be performed nor could the property be subdivided unless the property was rezoned. CDC sought approval from West Jordan City to accomplish the necessary rezoning. After CDC presented several rezoning applications, the City irrevocably denied CDC's request.

¶3 The efforts to rezone the property extended beyond the deadlines set forth in the Development Contract. CDC obtained two extensions of the contract.

¶4 In August 1999, Mr. Morrison signed two listing agreements with Tri–State Realtors, P.C., a licensed real estate brokerage firm, to sell the property as raw land. Tri–State had the same principals as CDC. After the August 1999 listing agreement expired, CDC located a buyer, D.R. Horton, Inc., who agreed to buy the land in its raw form. Before the sale closed, Mr. Morrison conveyed the property to Amenti, Inc., an entity created by Mr. Morrison and his sister in 2002.[1] Eventually, Amenti and D.R. Horton entered a purchase contract (the "D.R. Horton Agreement") whereby Amenti sold the land to D.R. Horton for approximately three million dollars. CDC listed itself on the D.R. Horton Agreement as "seller" and signed it. Amenti and D.R. Horton later signed an amendment to the D.R. Horton Agreement, which clarified that CDC "has no ownership interest in the Property and may be removed from any further documents or instruments related to the transaction described herein as a 'Seller' of the Property." CDC refused to sign the amendment.

¶5 CDC then asserted that it was entitled to receive one-half of all the sale proceeds pursuant to the 1997 Development Contract. Amenti refused to honor CDC's claims and CDC brought suit. CDC alleged that Amenti breached the Development Contract and two listing agreements. During discovery, CDC moved to amend its complaint to include claims for dissolution of a partnership or joint venture, conversion, quantum meruit, and breach of fiduciary duty. The district court denied CDC's motion to amend. A bench trial was held, and the district court ultimately rejected all of CDC's claims. In doing so, the district court made the following six conclusions of law: (1) that CDC was not entitled to share in the proceeds of the sale of the land to D.R. Horton because CDC had not developed the land into lots as required by the Development Contract; (2) that the City of West Jordan's denial of the rezoning application for the property was a frustration of the purpose of the Development Contract and that neither party was required to perform further under the contract; (3) that neither the Development Contract nor CDC's references to a joint venture in other documents created a joint venture between CDC and Amenti; (4) that CDC was not entitled to a share of the D.R. Horton sale proceeds merely because it listed itself as a seller; (5) that no other documents signed by CDC or Amenti created a joint venture between the parties; and (6) that the integration clause in the D.R. Horton Agreement did not merge the 1997 Development Contract into the D.R. Horton Agreement.

¶6 On appeal, CDC contends the district court erred for two reasons: (1) CDC alleges the parties formed a joint venture that existed through the closing of the sale of the

---

1. Throughout this opinion we refer to both Mr. Morrison and Amenti, Inc. as "Amenti."

property to D.R. Horton, thus entitling it to one-half of all the proceeds of the sale and (2) the D.R. Horton Agreement incorporated the terms of the Development Contract because it contained an integration clause and listed CDC as a seller, thus merging the two documents and entitling CDC to one-half of all the proceeds of the sale.

¶ 7 This court initially transferred the appeal to the court of appeals, but subsequently vacated the transfer and recalled the case. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

¶ 8 The parties are in dispute over the appropriate standards of review in this case. While CDC argues that the correctness standard applies, Amenti contends that the district court's rulings were the result of a fact-intensive evaluation and should thus be reviewed for clear error. We discuss the proper standards of review in the course of our analysis below.

## ANALYSIS

¶ 9 Although CDC's claims below arose out of alleged breaches of the Development Contract and the two listing agreements, CDC makes two different arguments on appeal. First, CDC alleges that events occurring after the Development Contract was signed indicate the parties were engaged in a joint venture. Second, CDC argues that the Development Contract merged into the D.R. Horton Agreement, entitling CDC to receive profits from the sale of the Property. We address each of these issues in turn.

I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT CDC AND AMENTI DID NOT FORM A JOINT VENTURE

¶ 10 Over a year after CDC filed its initial complaint, it moved to amend the complaint to include claims that a joint venture existed, that Amenti converted CDC's share of the proceeds of the land sale, that Amenti was unjustly enriched, and that Amenti breached a fiduciary duty it had to CDC.

Amenti opposed the motion to amend and the court denied it.

¶ 11 Based on the district court's final order, however, it appears that the question of a joint venture was injected into the bench trial and considered by the court. For instance, the district court held:

> The 1997 Development Contract is clear and unambiguous that CDC and Mr. Morrison were going to cooperate in the development of the Property as independent parties and not as partners or in a joint venture. The evidence fails to establish any agreement on the part of the parties to change the nature of their relationship to that of a joint venture such that CDC would be entitled to one half of the proceeds of the sale of the Property to D.R. Horton, as CDC argued at trial. *CDC's own periodic references to a "joint venture" or to itself, along with Mr. Morrison, as "seller" in the years after the [Development] Contract was executed did not serve to create such a relationship or to change the parties' agreement in that regard.*

(Emphasis added.)

¶ 12 CDC argues that the question of whether a joint venture existed is a question of contract interpretation, which we should review for correctness. The contract they believe this court should interpret is the D.R. Horton Agreement, which initially listed CDC as a seller. Amenti argues that the question of whether a joint venture existed is, at the very least, a mixed question of law and fact.

¶ 13 Because there are multiple factual elements to the test for a joint venture, the district court's holding should be reviewed for clear error. *See Roderick v. Ricks*, 2002 UT 84, ¶ 27, 54 P.3d 1119; *Rogers v. M.O. Bitner Co.*, 738 P.2d 1029, 1032 (Utah 1987). Although CDC maintains that all the district court needed to do to determine if a joint venture existed was examine the D.R. Horton Agreement, observe that CDC was listed as a seller, and on that evidence alone, conclude that a joint venture existed, the court was required to take into account additional factual elements in the course of evaluating whether a joint venture existed. *Rogers*, 738

P.2d at 1032, 1035 (Zimmerman, J., concurring).

¶14 We have long held that "[i]n order to challenge a court's factual findings, an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *Chen v. Stewart*, 2004 UT 82, ¶76, 100 P.3d 1177 (internal quotation marks omitted). "If the marshaling requirement is not met ... we assume that the evidence supports the trial court's findings" and may "affirm ... on that basis alone." *Id.* ¶80; *see also United Park City Mines Co. v. Stichting Mayflower Mountain Fonds*, 2006 UT 35, ¶27, 140 P.3d 1200 ("When parties fail to [marshal], we can rely on that failure to affirm the lower court's findings of fact."). Because CDC's arguments concerning the genesis of a joint venture take issue with district court findings that are highly fact dependent, CDC is obligated to marshal the evidence in support of those district court holdings. It did not marshal. CDC was thorough in ferreting out portions of the record that may have been at odds with the district court's rulings, however, it did not describe how the evidence in the record, which appeared to support the district court's findings, was insufficient. Because CDC failed to marshal the evidence, we affirm the trial court's factual findings, including its determination that there was no joint venture between the parties.

## II. THE DEVELOPMENT CONTRACT DID NOT MERGE INTO THE D.R. HORTON AGREEMENT

¶15 In its opening brief, CDC mentions the doctrine of merger and then states: "It is part of CDC's position that ... the 1997 Development Contract, as amended, entitled CDC to receive profits from the sale of the property to D.R. Horton jointly as a 'Seller.'" There is no further analysis of this argument in either the opening brief or the reply brief. Amenti, however, attempts to address what it believes CDC's merger argument to be, namely, that the 1997 Development Contract remained in effect at the time the D.R. Horton Agreement was first executed in November 2002, and that the integration provision in the D.R. Horton Agreement served to merge the Development Contract into the D.R. Horton Agreement. The district court held that the integration clause in the D.R. Horton Agreement did not merge the Development Contract into that document.

¶16 Several flaws handicap CDC's merger argument. CDC incorrectly conflates the doctrines of merger and integration. The cases CDC cites in support of its merger argument concern fraud and the delivery of real estate deeds. *See Robinson v. Tripco Inv., Inc.*, 2000 UT App. 200, ¶11, 21 P.3d 219, 229–30; *Maynard v. Wharton*, 912 P.2d 446, 449 (Utah Ct.App.1996). As stated in those cases, where delivery of a deed is the only performance required of a seller, when the seller delivers the deed and the buyer accepts it, the deed controls the terms of the sale, even if an earlier agreement contained different terms. *Robinson*, 2000 UT App. 200, ¶11, 21 P.3d 219; *Maynard*, 912 P.2d at 449. This doctrine would not incorporate the terms of the Development Contract into the D.R. Horton Agreement.

¶17 Although CDC provides little to no analysis of the cases it cites, its argument could also be that the D.R. Horton Agreement is similar to the deed in a typical merger situation, in that once CDC was listed as a seller on the Agreement, any previous agreement to the contrary was superseded by the D.R. Horton Agreement. However, even this argument is flawed for at least two reasons. First, CDC cites no precedent for applying the doctrine of merger to anything but a deed. Second, reference to CDC was ultimately removed from the D.R. Horton Agreement. Regardless, there is no indication this argument was made below and since it is unpreserved, we will not address it. *State v. Holgate*, 2000 UT 74, ¶11, 10 P.3d 346.

¶18 Finding the merger doctrine issue to be unpreserved and inapplicable to this case, we now turn to CDC's possible integration argument. Based on the district court's conclusions of law, it appears that CDC made an integration argument below

and argued that because there was an integration clause in the D.R. Horton Agreement indicating that it expressed the final agreement of the parties, CDC is conclusively entitled to one-half of all the proceeds because it was listed as a seller. CDC asserts that its merger/integration argument should be reviewed for correctness because it is an issue of contract interpretation. We disagree.

¶ 19 The district court's conclusion that the integration clause in the D.R. Horton Agreement did not entitle CDC to a share of the proceeds of the sale is an issue of fact that should be reviewed for clear error. *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 10, 182 P.3d 326.

¶ 20 As to the factual finding concerning integration, CDC once again failed to marshal the evidence. CDC was required to show that it was clearly erroneous for the district court to conclude that the integration clause in a contract between D.R. Horton and Amenti had no bearing on a dispute between CDC and Amenti. It failed to do so.

¶ 21 We will not allow CDC to "dodge [its] duty [to marshal] by attempting to frame the issues as legal ones," *United Park City Mines Co. v. Stichting Mayflower Mountain Fonds*, 2006 UT 35, ¶ 25, 140 P.3d 1200, and we thus determine that CDC's failure to marshal the evidence once again ends our inquiry. *See Utah County v. Butler*, 2008 UT 12, ¶ 11, 179 P.3d 775 ("Parties that fail to marshal ... do so at the risk that the reviewing court will decline to review the trial court's factual findings.") (internal quotation marks omitted). Because CDC "fail[ed] to perform this critical task," *United Park City Mines Co.*, 2006 UT 35, ¶ 27, 140 P.3d 1200, we affirm the trial court's factual findings that the integration clause in the D.R. Horton Agreement did not affect the relationship between Amenti and CDC, and did not entitle CDC to one-half of all the proceeds from the sale of the property.

## CONCLUSION

¶ 22 Because CDC failed to marshal the evidence demonstrating the required elements of a joint venture existed, we hold that the district court did not err in finding that CDC and Amenti did not form a joint venture. We also hold that the district court did not err in finding that CDC was not entitled to one-half of all the proceeds of the sale of the property based on the integration clause in the D.R. Horton Agreement or because it listed itself as the seller. We therefore affirm the district court's dismissal of all of CDC's claims.

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.